# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **M.H. Legal Custodian and Next Best Friend of The Minor Child, W.H. On Behalf of W.H.** ) | **CASE NO:** |
| **C/O Eddie Sipplen** ) | |
| **Eddie Sipplen Attorney at Law, LLC** ) | **JUDGE:** |
| **1655 West Market Street, Ste240** ) | |
| **Akron, OH 44313** ) | |

M.H. Legal Custodian and Next Best
Friend of The Minor Child, W.H.  On
Behalf of W.H.
C/O Eddie Sipplen
Eddie Sipplen Attorney at Law, LLC
1655 West Market Street, Ste240
Akron, OH 44313

M.H.
c/o Eddie Sipplen
Eddie Sipplen Attorney at Law, LLC
1655 West Market Street, Ste 240
Akron, OH 44313

    PLAINTIFF,

vs.

AKRON CITY SCHOOL DISTRICT
BOARD OF EDUCATION
c/o Patrick Bravo, Board President
70 North Broadway Street
Akron, OH 44308

AKRON CITY SCHOOL DISTRICT
c/o Patrick Bravo, Board President
70 North Broadway Street
Akron, OH 44308

And

DAVID W. JAMES
Superintendent of Akron City School
District (Official and Individual Capacity)
70 North Broadway Street
AKRON, OH 44308

**CASE NO:**

**JUDGE:**

<u>**COMPLAINT**</u>
**(Jury Demand Endorsed Hereon)**

1

**PHILOMENA VINCENTE** )
**(Official and Individual Capacity)** )
**Leggett Community Learning Center** )
**333 East Thornton Street** )
**Akron, OH 44311** )
)
)

**TRACI MORRISON** )
 **(Official and Individual Capacity)** )
**Leggett Community Learning Center** )
**333 East Thornton Street** )
**Akron, OH 44311** )
)

**JOHN/JANE DOE TEACHER (Official** )
**and Individual Capacity)** )
**Leggett Community Learning Center** )
**333 East Thornton Street** )
**Akron, Oh 44311** )
)

**JOHN/JANE DOE EMPLOYEE** )
**(OFFICIAL AND INDIVIDUAL** )
**CAPACITY)** )
**Leggett Community Learning Center** )
**333 East Thornton Street** )
**Akron, Oh 44311** )
)
**CHRISTOPHER HENDON** )
**(INMATE#A750288)**
**LORAINE CORRECTIONAL FACILITY**
**2075 SOUTH AVON-BELDEN ROAD**
**GRAFTON, OH 44044**

## DEFENDANTS

Plaintiff, by this Complaint, avers as Follows:

## PARTIES

1.       Plaintiffs in this civil rights action are an African-American child ("W.H.") with a behavioral and learning disability attending school in the Akron City School District and his mother ("M.H.").

2.       The Akron City School District ("District") and its employees unlawfully, injuriously, and punitively permitted the abuse of W.H., and created a harassing, intimidating, and discriminatory environment for W.H. while he was a student at Leggett Community Learning Center ("Leggett CLC").

3.       The Akron City School District Board of Education ("Board") failed to supervise, train, monitor, and/or maintain protective measures against violent and abusive individuals on Leggett CLC school grounds, an elementary school within the Akron City School District.

4.    The Board's failure to protect W.H. on Leggett CLC school grounds led to the abuse of W.H. by a stranger impersonating a police officer who had a limited affiliation with Leggett CLC or the Akron City School District.

5.    Failure on the part of Akron City School District Superintendent, David W. James ("James") to supervise and monitor Leggett CLC operations gave the abusive individual the opportunity to enter Leggett CLC and abuse W.H.

6.       Defendant, Christopher Hendon ("Hendon"), is an individual who was sentenced in Summit County Court of Common Pleas on or about March 7, 2018 for engaging in illegal activity including impersonating a police officer, kidnapping, and abduction.

3

7.     W.H., who is also a minor, was subjected to physical and/or emotional abuse by Hendon, with such abuse either deliberately ignored or condoned by Co-Defendants. The actions of the Defendants were primarily earmarked for the poor marginalized African-American children.

8.     The violence and abuse had no relationship whatsoever to any legitimate educational or other objective but rather was nothing more than intentional painfully injurious conduct toward W.H. and his misled guardian. Hendon's conduct toward W.H., and the Defendants' acquiescence and cover-up, were inexcusable.

9.     Defendants' unlawful conduct identified in this Complaint was not in furtherance of efforts to control or discipline students or maintain order or control in the classroom. Instead, the injuries to W.H. were caused by the Defendants' conscious and flagrant indifference to Plaintiffs' rights.

10.     Plaintiffs bring this action to seek and obtain monetary compensatory and punitive damages, as well as injunctive relief, for the intentional violations of their rights under the United States Constitution, Ohio Constitution, federal law and state law.

## JURISDICTION AND VENUE

11.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 through 10 as if fully re-written herein.

12.     This is a civil rights action brought pursuant to 42 U.S.C. §1983 and arising directly under the Constitutions of the United States and the State of Ohio. This action seeks injunctive relief to redress the deprivation by Defendants, under color of law of the rights, privileges and immunities secured to Plaintiffs by the Constitution and laws of the

United States, and rights guaranteed by the Constitution and laws of the State of Ohio, including, without limitation, rights secured to Plaintiffs by the fifth, Eighth and Fourteenth Amendments Amendment to the United States Constitution and Article I, Sections 2 and 9 of the Ohio Constitution. Jurisdiction is based upon 28 U.S.C. §§1331 and 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), since Defendants are located in this district. In addition, this is the judicial district in which a substantial part, if not all, of the events or omissions giving rise to the constitutional claims occurred.

13.    Venue is conferred under 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

14.    All jurisdictional requirements have been met. Plaintiffs are not required to exhaust administrative remedies because the causes of action are discrimination-based. See Fry v. Napoleon Community Schools,137 S.Ct. 743, 197 L.Ed.2d 46, 2017 WL 685533 (S.Ct. 2017).

## **PARTIES**

15.    Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 through 14 above as if fully rewritten herein.

16.    W.H. is an African-American U.S. minor citizen residing in Akron, Summit County, Ohio and at all relevant times, had been a student attending Leggett CLC.

17.    M.H. is an African-American U.S. citizen residing in Akron, Summit County, Ohio.

18.    W.H. and M.H.'s identities and address are withheld due to the confidential nature of this proceeding and fear of retaliation from persons in the community that are close to several Co-Defendants.

19.     Defendant, the Akron City School District Board of Education ("Board"), through its President, is the governing body of the Akron City School District and a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 70 North Broadway Street, Akron, Ohio 44308. The Board is an entity operating under the laws of the State of Ohio and is authorized to sue and be sued as an entity for its acts and those of its agents and employees.

20.     Defendant, the Akron City School District ("District"), through its President, is a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 70 North Broadway Street, Akron, Ohio 44308. At all relevant times herein, the District had authority over how W.H. was treated while he attended Leggett CLC.

21.     The District and Board have their primary place of business in Summit County, Ohio.

22.     Upon information and belief, during all relevant periods of time herein, David W. James ("James") was the superintendent of the District and, in such capacity, was responsible for the training and supervision of the staff at Leggett CLC, including Philomena  Vincente and TRACI MORRISON, the principal and teacher of W.H. Along with the John and Jane Does, James is being sued in his official capacity. Upon information and belief, Defendant James was a final policymaker for the District with regard to directing and controlling Vincente and Phillip's conduct and reporting abuse to authorities.

23.     Upon information and belief, during all relevant periods of time herein, Defendant, Philomena Vincente ("Vincente"), is a U.S. citizen and at all relevant times the Principal at Leggett CLC charged with the responsibility of assuring that students are

6

properly cared for, teachers properly perform their duties, and policies, procedures, and programs that protect students from abuse while they attend said school are properly implemented. Vincente is sued in her individual and official capacity.

24.     Upon information and belief, during all relevant periods of time herein, Defendant, Traci Morrison ("Morrison"), is a U.S. citizen and at all relevant times was the homeroom teacher of W.H., charged with the responsibility of assuring that students are properly supervised and protected from abuse while in her class. Morrison is sued in her individual and official capacity.

25.     Upon information and belief, Defendant, Christopher Hendon ("Hendon"), is a U.S. citizen and at all relevant times impersonated a police officer and was granted permission to enter Leggett CLC to promote his "scared straight" program that included the abuse of minor students on and off Leggett CLC property.

26.     Defendant, John/Jane Doe Teacher, at all relevant times worked for the District and the Board at Leggett CLC and was charged with the responsibility of assuring that students are properly supervised and protected from abuse while in his/her class. John/Jane Doe Teacher is sued in his or her individual and official capacity.

27.     Defendant, John/Jane Doe Employee at all relevant times worked for the District and the Board at Leggett CLC and allowed Hendon access to the school building. John/Jane Doe Employee is sued in his or her individual and official capacity.

## STATEMENT OF FACTS

28.     Plaintiffs reincorporate by reference the allegations set forth paragraphs 1 through 27 above as if fully rewritten herein.

29.     W.H. is an African-American minor child.

7

30.     M.H. is the African-American mother and guardian of W.H.

31.     W.H., at all relevant times, was a student at Leggett CLC in the Akron School District.

32.     W.H. has been attending Leggett CLC since kindergarten and through the present.

33.     At the request of Leggett CLC, W.H. was evaluated for an Individualized Education Plan ("IEP").

34.     W.H. was diagnosed with having a learning disability and Attention Deficit Hyperactivity Disorder ("ADHD").

35.     W.H. due to his learning disability was given an IEP, a prescription and placed in special education classes.

36.     Defendant Morrison was W.H.'s homeroom teacher and special education teacher.

37.     Defendant Morrison knew of W.H.'s IEP.

38.     Bravo was sworn in as Board of Education President of Leggett CLC, and all other public schools in the Akron City School District, on January 9, 2017.

39.     On or about April 6, 2017, W.H. was sent to the main administrative office at Leggett CLC to be disciplined.

40.     On arrival at the administrative office, W.H. met Hendon, Morrison and John/Jane Doe Employee at the Nurse's Office.

41.     All parties were aware of Hendon's presence.

42.     Hendon conducted a "scared straight" mentor program at Leggett CLC with Defendants' knowledge and permission.

43.     Hendon was never an administrator or employee at Leggett CLC.

44.     Hendon was wearing, and often wore on Leggett CLC property, an all-black police uniform with a badge that was partly covered with black tape.

45.     Hendon openly carried a gun and held himself out as an officer of the peace/resource officer.

46.     Hendon was introduced to mother, M.H., by Defendant Morrison and was advised by Morrison that Hendon was a mentor and that Hendon ran a scared straight program at Leggett CLC.

47.     Hendon also introduced himself to M.H. Hendon talked to her about the mentor program that he conducted at Leggett CLC with the support of Co-Defendants. All parties were present when Hendon made the statements to M.H.

48.     Hendon informed M.H. that the "sacred straight" program he conducted included transporting children from the school to the local prison, handcuffing them, and placing them in prison cells.

49.     Hendon had no credentials or training as a law enforcement or school resource officer, and Defendants knew or should have known that Hendon had lacked the proper credentials and training to be a law enforcement officer. However, Defendants held Hendon out to the community as having proper credentials.

50.     On or about April 6/7, 2017, all Defendants falsely represented Hendon to M.H. As a result of Defendants' misrepresentation, Hendon met with Plaintiffs at Leggett CLC in Akron, Summit County, Ohio.

51.     On or about April 6/7, 2017 M.H. called on her personal cellphone from Hendon, stating that he was calling from Leggett CLC and was calling to let her know that her son was participating in the scared straight program.

52.     Only the school officials at Leggett CLC had access to M.H.'s personal contact information.

53.     M.H. did not give permission to any employee of Akron City School District or Leggett CLC to allow Hendon to have access to her personal contact information.  M.H. does not know how Hendon was able to access her and W.H.'s personal information.

54.     W.H. was in the Nurse's Station when M.H. arrived.

55.     Vincente was in her office near the Nurse's station.

56.     Upon arrival M.H. saw her son, W.H. handcuffed to another African-American boy of the same age.

57.     There were no Caucasian children in this room handcuffed or participating in the scared straight program.

58.     She saw her son being hysterical and screaming and hollering, while handcuffed to the other child, "I don't want to go to jail!"

59.     Additionally, M.H. observed two other students handcuffed together, an African American boy and girl of similar age to M.H. Their mother was present with them also in the Nurse's office.

60.     Defendant Morrison advised M.H. that she wanted W.H. in Hendon's scared straight program.

61.     Without M.H.'s permission volunteered W.H. for Hendon's scared straight program.

62.     At the request of Morrison and thinking that a police officer, with a program sponsored by Leggett CLC, that could help mentor W.H., M.H. agreed to let W.H. participate in the program.

63.     After removing W.H. from Leggett CLC Hendon took W.H.  to the Summit County Juvenile Detention Center and attempted to take W.H. to the Summit County Jail.

64.     Prior to placing W.H. in his private vehicle while on the grounds of Leggett, CLC, Hendon advised W.H. "If you try to run, I will taser you."

65.     Hendon brought M.H. home approximately one hour and a half after school at Leggett CLC ended on April 6/7, 2018.

66.     Most White students were not similarly treated.

67.     No one from the school ever contacted M.H. regarding this event.

68.     M.H. was unaware of the physical abuse until Hendon was later criminally charged.  When the news regarding Hendon went public Vincente did not contact M.H. nor speak with him about the situation.  However, even after she found out about Hendon's misrepresentation, Vincente still did not report Hendon's abuse of W.H. to her mother.

69.     On other occasions, Hendon put handcuffs on W.H. in addition to handcuffing other children while they were on school property.  Teachers and other employees were present when this behavior took place including Vincente, Ramon, Defendant John or Jane Doe Employee, and/or John or Jane Doe Teacher.

70.     On April 24, 2017, Hendon was arrested for impersonating a law enforcement officer/ resource officer for the Akron City School District.

11

71.     W.H. was quiet, embarrassed, and hurt, and did not speak to M.H. about what happened on April 6/7, 2017 regarding Hendon until Hendon's arrest for impersonating a police officer was broadcast on the news.

72.     Hendon was indicted on 61 felony counts and later pled guilty to seven counts of kidnapping, six counts of abduction, fifteen counts of impersonating a police officer and three counts of illegal conveyance of a weapon into school.

73.     Ever since the incident involving Hendon, M.H. has observed W.H. struggle more with his behavior and learning. Incidents of emotional outburst, property damage and mistrust of police and authority figures have increased.

74.     On or about March 7, 2018, Hendon was sentenced to 5 years, 11 months years in prison.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983)

75.      Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 – 74 as if fully rewritten herein.

76.     Plaintiffs bring this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

77.     Plaintiff brings this claim against all Defendants.

78.     Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

79.     The acts of the Defendants were performed under color of law and deprived W.H. of his right to be free from unreasonable seizures by the use of force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and violated his right against cruel and unusual punishment.  Defendants have also violated W.H.'s Eight Amendment rights.

80.     Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of Defendants' misconduct.

81.     By their actions, as described herein, Defendants, as a part of a custom, policy and/or practice, subjected W.H. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law. In particular, as a student in a public school, Plaintiff has a liberty interest in personal security and freedom from restraint and infliction of pain through a course of conduct that shocks the conscience.

82.     Under Ohio Rev. Code Ann. § 3313.64, the State of Ohio confers a right upon W.H. to receive a free public education.

83.     Such a right is a property and/or liberty interest, within the meaning of the Fourteenth Amendment of the United States Constitution.

84.     Under Ohio Rev. Code Ann. § 3313.666, the State of Ohio further entitles W.H. to receive that education in a school environment that is free of harassment, intimidation, or bullying on school property.  Moreover, Defendants are required to create and maintain procedures that prohibit harassment, intimidation, or bullying, and require school personnel to report prohibited incidents.

85.     Accordingly, Plaintiffs have a property and/or liberty interest[1] in such a school environment that is included within the substantive component of the Fourteenth Amendment's Due Process Clause to the U.S. Constitution.

---

[1] Protected interests in property "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

86.     Plaintiffs state that Defendants used their authority as Leggett CLC employees and administrators to arbitrarily deprive W.H. of this interest and his interest in bodily integrity.[2]

87.     Defendant Vincente is the Principal at Leggett CLC and is responsible for supervising and overseeing the policies, procedures, and operations of Leggett CLC, as well as creating and implementing the school's policies.

88.     Defendants had a duty to implement and follow policies, practices, and procedures which respected and preserved Plaintiffs' constitutional rights. Defendants failed to implement such policies, and/or the policies implemented by Defendants were constitutionally inadequate.

89.     Plaintiffs state that Defendant Vincente, through her affirmative actions, ignored policies and procedures and/or implemented policies and procedures that infringed on Plaintiffs' constitutional rights, and directly and intentionally placed W.H. in a position where there would be a risk to his health and safety.

90.     In other words, Defendant Vincente's deliberate indifference endangered W.H., and created a risk of harm by permitting Hendon, a private person with no law enforcement or administrative background, to harass, intimidate, and bully W.H. in an unsupervised environment on Leggett CLC property.  Defendant Vincente knew of and disregarded the risk Hendon posed to W.H.'s safety, thus creating the danger.

---

[2] "A governmental actor may, however, violate the due process clause by allowing a third party to harm a person in government custody…or by creating a particular danger to the victim. This latter theory of liability… has been recognized in this Circuit as a viable species of substantive due process claim." Kallstrom v. City of Columbus,136 F.3d 1055, 1065-67 (6th Cir.1998).

91.     Plaintiffs state that Defendant Vincente, through her affirmative actions and deliberate indifference, ignored policies and procedures and/or implemented policies and procedures, and endangered W.H.  By allowing Hendon, a private person, to take W.H. out of the classroom without any supervision, Defendant Vincente endangered W.H.'s health and safety. Defendant Vincente knew of and disregarded the risk Hendon posed to W.H.'s safety, thus creating the danger.

92.     Plaintiffs further state that Defendants violated a fundamental right granted to M.H.

93.     The District, the Board, James, Vincente, and Ramon knowingly permitted, authorized, and sanctioned harm to W.H.

94.     Defendants' actions and/or omissions, as described herein, were taken in accordance with the District and Board's custom and/or policy, or were ratified by the District and Board, such that the District and Board adopted such practices, customs, or policies.

95.     Defendants knew or reasonably should have known about the abusive practices with respect to W.H. The abusive and unconstitutional practices Defendants regularly undertook are so well settled as to constitute a custom or usage in the District. Yet, Defendants failed to take any affirmative actions to provide for the safety and well-being of African-American children with disabilities in Defendants' care, including W.H.

96.     Defendants' actions, as described above, were objectively unreasonable, willful, and wanton, and shocking to the conscience considering the facts and circumstances surrounding the assault inflicted on W.H., an African-American child with disabilities, and entrusted to Defendants' care.

15

97.     The conduct of the individual Defendants described herein violated clearly established rights of Plaintiffs of which reasonable people in the Defendants' position knew or should have known.

98.     Defendants knew or should have known that the State of Ohio Department of Education policies and state law forbade the use of unreasonable and unnecessary force. Defendants nonetheless continued these customs, policies, and/or practices.

99.     Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

100.    W.H., like all United States citizens, has the substantive due process constitutional right to personal security and bodily integrity.

101.    W.H. also has the substantive due process constitutional right to be free from arbitrary government conduct that lacks all socially redeeming value.

102.    The relationship between W.H. and the Defendants was not voluntary. W.H. was required by law to attend the District's schools, in general, and Morrison's class.

103.    The force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

104.    Defendants deprived W.H. of his constitutional right to substantive due process by engaging in arbitrary actions and omissions towards him that was of such an extreme nature as to shock the conscience. Vincente, Morrison, and Hendon acted unlawfully, and James acquiesced as a supervisor and final policymakers for the District.

105.    Defendants' conduct amounted to a tacit authorization of the abuse.

16

106.    Defendants acted under color of law to deprive Plaintiffs of their protected property interests under the Due Process Clause.

107.    None of the Defendants were pursuing any legitimate governmental purpose by allowing Hendon to verbally and physically intimidating, harassing, and abusing W.H.

108.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages, including injuries to W.H.'s person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages.

109.    The Supreme Court has recognized a "fundamental right of parents to make decisions concerning the care, custody and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, (2000).

110.    Hendon was not employed by Leggett CLC or the Akron City School District, nor does he have administrative or law enforcement training.

111.    Defendants usurped M.H.'s fundamental right to make decisions concerning the care, custody, and control of W.H. by allowing Hendon to discipline W.H. without informed consent and allowing Hendon to take control over W.H. without informed consent.

112.    Defendants violated M.H.'s recognized fundamental right by refusing to ask for her input or following school disciplinary procedure.

113.    As a direct and proximate result of the misconduct of the Defendants, W.H. suffered permanent injuries and damages as set forth in the Complaint and, in addition incurred medical treatment and will be forced to incur additional treatment and bills indefinitely into the future.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights

17

against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[3] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

## SECOND CLAIM FOR RELIEF
### (GOVERNMENTAL LIABILITY – FAILURE TO TRAIN AND SUPERVISE AND DISCIPLINE)

114.    Plaintiff repeats and incorporates by reference each and every allegation contained in Paragraphs **1** through 113 as if fully rewritten herein.

115.    Failure on the part of Akron City School District Superintendent, David W. James ("James") and School Board President Bravo to supervise and monitor Leggett CLC operations gave the abusive individual the opportunity to enter Leggett CLC and abuse W.H.

116.    James and Bravo failed to adequately train and supervise school principal and teachers concerning proper procedures for allowing an armed person onto the school and allowing the same to interact and/or remove children from the premises of an Akron Public School District Community Learning Centers and the constitutional limitations relative to the use of force and restraint and the proper procedures and constitutional limitations for assessing, planning and executing citizen apprehensions, detention, seizure and confinement. These failures are a proximate cause of the constitutional violations set forth in this Complaint and is contrary to written rules and policies demonstrates that a habit, pattern, and practice of violating official policies exists within the offices of the Leggett Community Learning Center.

---

[3] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

117.     After learning of the violations of Akron Public School Districts policies and breaches of security, James and Bravo failed to discipline the Leggett school officials and employees involved with Hendon and his scared straight program.

118.     The policies, procedures, and failures just mentioned exhibit the deliberate indifference to the constitutional rights of Ohio's citizens, including W.H.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[4] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Willful, Wanton, and Reckless Conduct of School Staff and Employees)**

119.     Plaintiff repeats and incorporates by reference each and every allegation contained in Paragraphs **1**  through 118 as if fully rewritten herein.

120.     Defendants failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in compulsory educational functions and activities culminating in W.H.'s subsequent emotional abuse and torture during his encounter with Hendon.  Superintendent James, Board President Bravo, Principal Vicente, and Homeroom teacher MORRISON, John/Jane Doe Teachers, John/Jane Doe employees either did not care, did not use, or were not properly trained regarding the Akron Public School District's policy on allowing access to the children entrusted to their care.  These defendants failed to properly check Hendon's credentials as a law enforcement officer, did not know that the Akron Public School System did not have nor participated in a scared

---

[4] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." <u>Smith v. Wade</u>, 461 U.S. 30, 50 –51(1983); <u>Clark v. Taylor</u>, 710 F.2d 4, 14(1st Cir. 1983).

straight program and failed to obtain the proper permissions for granting Hendon access to the children and in particular, W.H.  In the end, it was Defendants who acted willfully, wantonly, and recklessly.  The Defendants actions created and caused the unsafe, tense, uncertain, and cruel and unusual punishment situation which resulted in needless injuries to W.H.  This would not have occurred had Defendants performed in the manner in which they should have been trained and/or retrained.

121.     Such negligent, reckless, wanton, and willful conduct proximately caused W.H. permanent physical and emotional injuries and the damages specified in this complaint.

122.     The defendants' negligent, reckless, wanton, and willful conduct deprived Plaintiff and all other persons similarly situated, of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution, in that it treated Plaintiff and others similarly situated in an invidiously discriminatory manner based upon their gender and Plaintiff suffered damages as a direct and proximate result of defendants' negligence.

123.     Plaintiff has been further damaged as a direct and proximate result  by the individual Defendants' reckless indifference to her clearly established constitutional rights in an amount to be determined at trial in this matter.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said

Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[5] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

### FOURTH CLAIM FOR RELIEF
#### (Ohio Constitution's Guarantee of Equal Protection)

124.     Plaintiff repeats and incorporates by reference each and every allegation contained in Paragraphs 1 through 123 as if fully rewritten herein.

125.     The defendants' negligent failure to adequately hire, train, supervise and/or discipline Defendant  Vincente, MORRISON, John/Jane Doe Teachers, John/Jane Doe Employee deprived Plaintiff, and all other persons similarly situated, of equal protection of the laws in violation of Article I, section 2 of the Ohio Constitution, in that it treated Plaintiff and others similarly situated in an invidiously discriminatory manner based upon their gender and Plaintiff suffered damages as a direct and proximate result of defendants' negligence.

126.     Plaintiff has been further damaged as a direct and proximate result by the individual Defendants' reckless indifference to her clearly established constitutional rights in an amount to be determined at trial in this matter.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[6] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

---

[5] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 −51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

[6] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 −51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

**FIFTH CLAIM FOR RELIEF**
**(Ohio Constitution's Prohibition of Cruel and Unusual Punishment)**

127.     Plaintiff repeats and incorporates by reference each and every

allegation contained in Paragraphs 1 through 126 as if fully rewritten herein.

128.     The defendants' James and Bravo negligent failure to adequately hire, train,

supervise and/or discipline Defendant  Vincent, MORRISON, John/Jane Doe Teachers,

John/Jane Doe Employee deprived Plaintiff, and all other persons similarly situated of  their

rights to be free from cruel and unusual punishment    in violation of Article I, section 9 of

the Ohio Constitution and Plaintiff suffered damages as a direct and proximate result of

defendants' negligence.

129.       Plaintiff has been further damaged as a direct and proximate result by the

individual Defendants' reckless indifference to his clearly established constitutional rights in

an amount to be determined at trial in this matter.

   **WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights

against all the Defendants jointly and severally, for actual, general, special, compensatory

damages in the amount of $500,000 and further demands judgment against each of said

Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[7] plus the

cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

**SIXTH CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §§
794 et seq.)**

130.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 -129

   as if fully rewritten herein.

---

[7] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

131.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794

("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104,

prohibit discrimination against persons with disabilities. W.H. has learning and

behavioral disabilities as alleged previously and is a protected person under Section 504.

132.     Section 504 prohibits the exclusion from the participation in, or being denied the

benefits of, or being subjected to discrimination under, any program or activity receiving

federal financial assistance. Congressional authority to condition federal funding under

this Act is derived from the enumerated powers contained in Article 1, Section 8 of the

U.S. Constitution.

133.     The Akron City School District is a recipient of federal financial assistance.

134.     The practices described above, including but not limited to, permitting Hendon to

assault W.H., were discriminatory and denied W.H. the benefits of participation in a

public-school education.

135.     Students without disabilities were not subjected to the abuses W.H. was subjected

to, as described herein. This difference in treatment was due, in whole or part, to W.H.'s

status as a student with disabilities. Non-disabled were not subjected to Hendon's

maltreatment. This abusive and illegal treatment was reserved solely for W.H., a child with

disabilities.

136.     Defendants have violated W.H.'s rights under Section 504 and the regulations

promulgated thereunder by denying W.H. the benefits of receiving full and equal access to

the public education programs and activities offered within the District.

23

137.     Defendants' practices were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the practices would result in a violation of W.H.'s federally protected rights.

138.     As a direct and proximate result of Defendants' violation of Section 504, W.H. has suffered, continues to suffer, and will suffer in the future injuries to his person including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[8] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable in their official capacity only.

## SEVENTH CLAIM FOR RELIEF
### Violation of The Americans With Disabilities Act ("ADA") (42 U.S.C. §§12131 et seq.)

139.     Plaintiffs reincorporate by reference the allegations set forth above paragraphs 1 – 138 as if fully rewritten herein.

140.     Title II of the ADA, 42 U.S.C. §12131 et seq. and the regulations thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from

---

[8] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

discrimination on the basis of disability by public entities. W.H. has learning and behavioral disabilities as alleged previously and is a protected person under the ADA.

141.    The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

142.    The discriminatory practices described herein excluded W.H. from participating in and receiving the benefits of a public-school education.

143.    Defendants' practices were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of W.H.'s federally protected rights.

144.    Defendants violated W.H.'s rights under the ADA and the regulations promulgated thereunder, denying W.H. the benefits of the services, programs, and activities to which he was otherwise entitled. W.H. was mistreated in violation of law as a direct result of his disabilities, and the manifestation of these disabilities.

145.    Students without disabilities were not subjected to the abuses W.H. was subjected to, as described herein. This difference in treatment was due, in whole or part, to W.H.'s status as a student with disabilities. Non-disabled were not subjected to Hendon's maltreatment. This abusive and illegal treatment was reserved solely for W.H., a child with disabilities.

146.    As a direct and proximate result of Defendants' violation of the ADA, W.H. has suffered and continues to suffer injuries to his person, including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[9] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable in their official capacities only.

**EIGTH CLAIM FOR RELIEF**
**(Violation of Title VI of the Civil Rights Act of 1964)**

147.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 - 146 as if fully rewritten herein.

148.     Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Defendants receive Federal financial assistance and are subject to Title VI requirements.

149.     W.H. is African-American; therefore, he is in a protected class.

150.     W.H. has a protected right to be free from race-based discrimination and harassment under Title VI of the Civil Rights Act of 1964.

151.     W.H. was subjected to intentional discrimination, harassment, and assault due to his race.

---

[9] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

152.     Most, if not all, the students affected by the "Hendon scared straight" program were African-American.

153.     This race-based harassment/assault created a hostile educational environment.

154.     As a direct and proximate cause of the hostile educational environment that was allowed to flourish due to Defendants' deliberate indifference, W.H. experienced such severe, pervasive, and/or objectively offensive race-based harassment that he was deprived of equal access to educational benefits or opportunities.

155.     As a result of Defendants' failure to comply with its duty under § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., and its implementing regulations, W.H. has suffered damages including special and general damages according to proof.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[10] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

## NINTH CLAIM FOR RELIEF
### Failure to Report Child Abuse (Ohio Rev. Code 2151.421)

156.     Plaintiffs reincorporate by reference the allegations set forth above in paragraphs 1- 155 as if fully rewritten herein.

---

[10] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

157.     Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

158.     W.H. was an abused child under M.H. § 2151.031.

159.     Defendants were aware that Hendon grabbed W.H., handcuffed him and removed him from the Leggett CLC while handcuffed.

160.     Defendants were aware that Hendon used profanity in front of W.H. at Leggett CLC.

161.     Defendants were aware that Hendon put handcuffs on W.H. in addition to handcuffing other children while they were on school property.

162.     Defendants were aware that W.H. was an abused child under the statute.

163.     This child abuse was not reported by Defendants, as required under R.C. § 2151.421. As a result of these Defendants' failure to report child abuse, W.H. suffered further injury, including mental anguish and severe emotional injury.

164.     Despite the plain language and meaning of R.C. § 2151.421, Defendants failed to report the abuse to the public children services or local law enforcement.

165.     As a school authority and employee acting in her official and individual capacity, Defendant Vincente knew or had reasonable cause to suspect that W.H. suffered physical and mental injury that reasonably indicated abuse when Defendant gave Hendon permission to take W.H. to a private room without any supervision from Leggett CLC employees or teachers.  Plaintiffs further state that Defendant failed to immediately report this abuse.

166.     As a school teacher and employee acting in her official and individual capacity, Defendant MORRISON had reasonable cause to suspect that W.H. suffered physical and mental injury that reasonably indicated abuse when Defendant previously witnessed Hendon handcuffing innocent children at Leggett CLC and allowed Hendon to take W.H. out of Defendant's classroom.  Plaintiff further states that Defendant failed to immediately report suspected abuse.

167.     Defendants knew of Hendon's physical and verbal abuse of W.H. constituted child abuse against him under R.C. § 2151.031. However, Defendants did not report the child abuse, as required by R.C. § 2151.421.

168.     Defendants are liable to Plaintiffs, because their conduct falls outside of the protections afforded to them by the General Assembly, and their failure to report W.H.'s abuse caused further injury to Plaintiffs.

**WHEREFORE**,  for failing to report the suspected child abuse pursuant to Ohio Revised Code  § 2151.42, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[11] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

---

[11] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

## TENTH CLAIM FOR RELIEF
**Negligence**

169.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 –
168 as if fully rewritten herein.

170.     Defendants were negligent in conducting a proprietary function pursuant to Ohio
Revised Code 2744.02 (B)(2) and/or were negligent in conducting a governmental
function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

171.     Defendants have a duty of care to take reasonable care to ensure that their acts or
omissions do not cause reasonably foreseeable injury to their pupils.

172.     Defendants further have a duty to maintain custody and control of the Leggett
CLC building and supervise the student body.

173.     Defendants breached that duty by allowing Hendon to gain access to the building
and W.H.'s classroom and permitting Hendon to interact with and assault W.H. in an
unsupervised area of the building.

174.     Plaintiffs suffered personal injury as a direct and proximate result of Defendants'
failure to exercise reasonable care in the performance of their duties.

175.     In the alternative, Defendants, by maintaining custody and control of the building
and student body, engaged in an activity that is outside of the scope of their responsibilities
and obligations, which suggests that the activity was outside of the scope of their
employment, and thus proprietary in nature, rendering Defendants liable to Plaintiffs for
the injuries that their conduct caused Plaintiffs.

176.     In the alternative, to the extent it is determined that Defendants authorized and/or approved and/or permitted Hendon to gain access to the building and student body, Defendants' activities are not functions expressly delegated to them and are not activities performed in connection with either a governmental or proprietary function. Defendants, therefore, are liable for their willful and wanton conduct, because their conduct falls outside of the protections afforded to them by the General Assembly and because the conduct caused injuries to Plaintiffs.

177.     Defendants' actions or omissions produced Plaintiffs' injuries. Plaintiffs would not have suffered their injuries, but for Defendants' behavior.

178.     An ordinarily prudent person could have reasonably foreseen that Defendants' conduct would likely lead to Plaintiffs suffering some injury.

179.     Defendants' actions demonstrate recklessness, malice, willful and wanton conduct.

180.     As a proximate cause of Defendants' negligent conduct, Plaintiffs have suffered injuries including serious emotional distress.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[12] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

---

[12] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

## ELEVENTH CLAIM FOR RELIEF
### Negligence *Per Se* - Ohio Revised Code § 2919.22

181.    Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 - 180 as if fully rewritten herein.

182.    Ohio Revised Code § 2919.22 specifically mandates that no person having custody or control of a child under 18 years of age shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. R.C. § 2919.22 further mandates that no person shall abuse such child; torture or cruelly abuse such child; or administer corporal punishment or other physical disciplinary measure, or physically restrain such child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.

183.    Defendants, by virtue of their relationship with W.H., had custody and control of W.H. during school hours.

184.    Defendants' actions taken against W.H. were in direct violation of R.C. § 2919.22.

185.    W.H. experienced physical pain, trauma, and significant emotional distress as a result of allowing Hendon to come in contact with W.H.

186.    Defendants had a duty to protect W.H. from assault as prohibited by Ohio law.

187.    Said actions are a violation of Ohio Revised Code § 2903.13 (assault) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

188.    Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

32

189.    As a direct consequence of these actions, W.H. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain, and suffering, for which he is entitled to compensatory damages and attorney's fees.

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[13] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

**TWELTH CLAIM FOR RELIEF**
**Negligence *Per Se* - Ohio Revised Code § 2151.421**

190.    Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 – 189 as if fully rewritten herein.

191.    Ohio Revised Code § 2151.421 specifically mandates that Defendants were to report Hendon's conduct to the appropriate authorities.

192.    Defendants intentionally and recklessly failed to timely report Hendon's conduct to the appropriate authorities.

193.    R.C. 2151.421 imposed that specific and mandatory reporting duty on the Defendants for the safety and protection of W.H.

194.    Defendants intentionally and recklessly failed to comply with the mandates of R.C. 2151.421.

---

[13] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

195.    As a direct and proximate cause of the Defendants' intentional and reckless violation of R.C. 2151.421, the Plaintiff children have suffered the type of injuries the statute was designed to protect against.

196.    The Defendants' violation of R.C. 2151.421 is a misdemeanor of the first degree.

197.    The Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

   **WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[14] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

## THIRTEENTH CLAIM FOR RELIEF
### Negligent Training/Supervision under Ohio Law

198.    Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 – 197 as if fully rewritten herein.

199.    The Supervisory Defendants (District, James and Vincente) each have duties to train and supervise teachers and other personnel in order to ensure the safety and wellbeing of students entrusted to their care and supervision.

200.    Each of the Supervisory Defendants failed to discharge these duties.

201.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

---

[14] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

202.    As a result, W.H. was harmed when Defendants allowed Hendon to verbally and physically assault W.H.

203.    The assault has caused W.H. significant trauma.

204.    Had the Supervisory Defendants made any effort to properly train and supervise Vincente and MORRISON, W.H. would not likely have suffered this egregious and conscience-shocking abuse by Hendon, nor would W.H. have likely sustained the damages that he has sustained and will sustain in the future.

205.    The Supervisory Defendants' failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of W.H.'s constitutional rights as described herein.

206.    The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

207.    The acts and/or omissions of the Supervisory Defendants caused W.H.'s damages in that he suffered extreme physical and mental pain and the lasting damage that he will endure in the future.

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[15] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

---

[15] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

## FOURTEENTH CLAIM FOR RELIEF
### Premises Liability

208.    Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 -

207 as if fully rewritten herein.

209.    Defendants failed to conduct a proprietary function pursuant to Ohio Revised

Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function

within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

210.    Plaintiffs state that Defendants have custody and control over Leggett CLC

school property.

211.    Plaintiffs state that W.H., as a student attending Leggett CLC, was an invitee

included in the class of people Defendants expect to be on Leggett CLC school property.

212.    Plaintiffs state that Defendants owed W.H. a duty to exercise ordinary and

reasonable care to keep the premises safe, and to protect W.H. from an unreasonable risk

of physical harm.

213.    Plaintiffs state that each of the Defendants breached the duty of care owed to

W.H. by not protecting him from an unreasonable risk of physical harm when Defendants

authorized and/or approved and/or permitted Hendon to gain access to the building,

allowed Hendon to handcuff and remove W.H. from school property and allowed Hendon

to interact with W.H. in an unsupervised location on and off of the school property.

214.    Plaintiffs further state that Defendants' breach of the duty owed to W.H.

proximately caused W.H.'s injuries.

36

215.     Accordingly, Defendants are liable to Plaintiffs, because by failing to keep the premises safe, their conduct falls outside of the protections afforded to them by the General Assembly, and such conduct caused injuries to Plaintiffs.

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[16] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

<u>FIFTEENTH CLAIM FOR RELIEF</u>
**Invasion of Privacy**

216.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 - 215 above as if fully rewritten herein.

217.     Defendants failed to conduct a proprietary function pursuant to Ohio Revised Code 2744.02 (B)(2) and/or are liable for not properly conducting a governmental function within a government building pursuant to Ohio Revised Code 2744.02 (B)(4).

218.     Plaintiffs state that Defendants intentionally and unreasonably intruded upon Plaintiffs' private affairs and concerns when Defendants gave Hendon, a third person who is not employed by Leggett CLC, W.H.'s and M.H.'s private information.

219.     These records maintained by the Akron City School District and Leggett CLC and include personally identifiable information on W.H. such as his grades and profile. Such records are further protected by the Family Educational Rights and Privacy Act of

---

[16] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." <u>Smith v. Wade</u>, 461 U.S. 30, 50 –51(1983); <u>Clark v. Taylor</u>, 710 F.2d 4, 14(1st Cir. 1983).

1974, which prohibits the disclosure of minor students' educational records unless a parent or guardian consents to the disclosure.

220.     Plaintiffs state that the nonconsensual disclosure of W.H.'s private and personal information by Morrison to Hendon would be highly offensive to a reasonable person, because the private information was given to Hendon who is not a parent, guardian, or employee, and who does not need a minor child's personal profile and grades.  Due to Defendants unreasonable intrusion into Plaintiffs' affairs, Hendon was able to better identify and injure W.H.  Defendants are liable to Plaintiffs, because their conduct falls outside of the protections afforded to them by the General Assembly.

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[17] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

## <u>SIXTEENTH CLAIM FOR RELIEF</u>
### Assault

221.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 – 220 as if fully rewritten herein.

222.     Hendon acted with the intent to create a state of fear or danger of harm or offensive contact with W.H.

---

[17] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." <u>Smith v. Wade</u>, 461 U.S. 30, 50 –51(1983); <u>Clark v. Taylor</u>, 710 F.2d 4, 14(1st Cir. 1983).

223.      W.H. had a reasonable belief that he would be subject to harm or offensive

contact by Hendon.

224.      W.H. experienced fear of such harm or offensive contact in response to Hendon's

conduct.

225.      Hendon's conduct towards W.H. was harmful and offensive.

226.      As a direct and proximate cause of the foregoing actions by Hendon towards

W.H., he has suffered damages.

227.      Defendants are vicariously liable for the assault.

   **WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and

severally, for actual, general, special, compensatory damages in the amount of $500,000 and

further demands judgment against each of said Defendants, jointly and severally, for punitive

damages in the amount of $1,000,000[18] plus the cost of this action, including attorney fees, and

such other relief deemed to be just and equitable.

## SEVENTEENTH CLAIM FOR RELIEF
### Battery

228.      Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 –

227 as if fully rewritten herein.

229.      Upon information and belief, in his actions towards W.H., Hendon engaged in

the intentional touching of or application of force to his body and did so in a harmful or

offensive manner, and without consent.

---

[18] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

230.     As a direct and proximate cause of the foregoing actions of Hendon towards W.H., he has suffered damages.

231.     Defendants are vicariously liable for battery.

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[19] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

Plaintiffs demand compensatory damages of $500,000.00, punitive damages of $1,000,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorneys' fees, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## EIGHTEENTH CLAIM FOR RELIEF
### Loss of Consortium

232.     Plaintiffs reincorporate by reference the allegations set forth in paragraphs 1 - 231 above as if fully rewritten herein.

233.     As a direct and proximate result of the conduct of Defendants, M.H., as the parent and guardian of W.H. has been damaged due to the deprivation of the services, society, companionship, comfort, love, solace and affection of W.H. and is entitled to recover for his loss of consortium in an amount to be determined at trial.

---

[19] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

**WHEREFORE**, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000[20] plus the cost of this action, including attorney fees, and such other relief deemed to be just and equitable.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

*/s/ EMSipplen*
_____

Date___April 16, 2018                   Eddie Sipplen (OH S.Ct. # 0076712)
                                        Eddie Sipplen Attorney at Law, LLC
                                        Mitchell Building
                                        1655 West Market Street, Ste 240
                                        Akron, OH 44313
                                        Ph: 330-374-5600

---

[20] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." <u>Smith v. Wade</u>, 461 U.S. 30, 50 −51(1983); <u>Clark v. Taylor</u>, 710 F.2d 4, 14(1st Cir. 1983).