UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| M.H., et al., | ) | CASE NO. 5:18-cv-870 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| AKRON CITY SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on Plaintiffs' notice of a discovery dispute related to defendants' privilege claims filed on June 10, 2019. (Doc. No. 66 ("Not.").) Defendants responded to the notice of dispute (Doc. No. 74 ("Res.").) and plaintiff replied. (Doc. No. 76 ("Reply").) The Court has conducted an *in camera* review of the disputed documents.[1]

**I. Background**

This case involves a man, defendant Christopher Hendon ("Hendon"), who allegedly impersonated a police officer to gain access to various Akron Public School ("APS") buildings to operate an unsanctioned "scared straight" program. Defendants claim that APS initiated an investigation "to find out exactly what happened," once the incident garnered media attention following Hendon's arrest. (Res. at 550.[2]) APS Superintendent, David James, also directed Rhonda Porter, APS General Counsel, to conduct an investigation and prepare a legal opinion regarding Hendon's actions. (*Id.* at 551.) The majority of the documents at issue relate to APS's and Ms. Porter's investigations. The issue is whether defendants' documents and communications are

---
[1] The Court will resolve Defendants' Notice of Discovery Dispute (Doc. No.67) in a separate Order.
[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

protected from disclosure under the attorney-client privilege or work product doctrine, whether investigative materials are public record, and whether, if privileged, the documents must be disclosed under Ohio's crime-fraud exception to attorney-client privilege.

## II. Law and Analysis

### A. Attorney-Client Privilege

The attorney-client privilege protects from disclosure "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." *In re Grand Jury Subpoena,* 886 F.2d 135, 137 (6th Cir.1989) (internal quotation marks omitted). The attorney-client privilege applies: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998); *The State ex rel. Leslie v. Ohio Housing Fin. Agency*, 824 N.E.2d 990, 995, (Ohio 2005). The burden of establishing the attorney-client privilege rests with the party asserting it. *Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)).

The attorney-client privilege is intended to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L.Ed.2d 584 (1981). "While the purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)).

**B.     Work Product Doctrine**

The work product doctrine, codified at Fed. R. Civ. P. 26(b)(3), provides a qualified protection from discovery in civil matters when materials are prepared in anticipation of litigation. "The doctrine's rationale, as originally articulated, was to permit an attorney to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference … to promote justice and to protect his clients' interests." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (internal quotation marks omitted). "[T]he work product protection under Rule 26(b)(3) is not limited to attorneys, but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation." *Roa v. Tetrick*, No. 1:13-cv-379, 2014 WL 695961, at *2 (S.D. Ohio Feb. 24, 2014). Therefore, the pertinent question is whether the documents at issue were prepared "in anticipation of litigation or for trial…." Fed. R. Civ. P. 26(b)(3)(A).

The Sixth Circuit has adopted the "because of" test as the standard for determining whether documents were prepared "in anticipation of litigation." *Roxworthy*, 457 F.3d at 593. Documents prepared in the ordinary course of business or for other nonlitigation purposes, are not protected under the work product doctrine. *Id.* Therefore, "a document will not be protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation. *Id.* at 593-94 (citing *United States v. Adlman (Adlman II)*, 134 F.3d 1194, 1205 (2d Cir. 1998)).

To determine whether a document was created "because of" litigation, the reviewing court asks "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594. Therefore, the asserting party must "have had a

subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Id.* (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

**C.     Analysis**

Defendants argue that APS subjectively believed litigation was probable on or around April 25, 2017, because the Akron Beacon Journal/Ohio.com published an article related to an armed man impersonating a police office in the schools. (Res. at 550.) The Court agrees that, when the public was made aware of an armed imposter roaming APS buildings, the possibility of litigation was objectively reasonable. It does not follow, however, that all of defendants' documents that relate to the incident and were created after April 25, 2017 "are protected under the work produce doctrine[,]" as defendants claim. (*Id.*) Rather, for documents to qualify for work product production, they must have been created "because of" potential litigation..

It is reasonable to believe that APS conducted certain fact-finding activities for other purposes—such as safety and lessons learned—rather than potential litigation. Documents created for purposes other than litigation are not protected work product. *See Sandra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 622 (7th Cir. 2010) (there is a difference between attorney-led investigations when the documents at issue can be fairly said to have been created in anticipation of litigation and "precautionary documents developed in the ordinary course of business for the remote prospect of litigation….") (internal quotation marks omitted). Similarly, the fact that Ms. Porter was "copied on … documents that were generated after litigation was probable," does not automatically trigger the work product doctrine. (Res. at 551.); *see Zigler v. Allstate Ins. Co.*, No. 1:06CV2112, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) ("A communication is not privileged simply because it is made by or to a person who happens to be an attorney.") (quotation marks omitted).

After an *in camera* review, the Court reiterates that the asserting party, here defendants, has the burden of establishing that the privilege applies. *See Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 294. Defendants did not provide a document-by-document analysis explaining why each communication is protected. Instead, defendants rely exclusively on the "Privilege Description" column of the privilege log. Further, defendants claim "Superintendent David James directed Ms. Porter to conduct an internal investigation and prepare a legal opinion regarding Hendon's actions because of possible litigation." (Res. at 551.) But defendants do not identify when Mr. James provided this directive or whether APS staff assisted Ms. Porter's investigation. In fact, the only evidence presented to the Court related to the investigation suggests that Ms. Porter conducted her investigation alone. (Doc. No. 66-2 (Deposition of David James ["James Dep."] at 469.) (Q: "Was … Rhonda Porter assisted in that investigation by anyone?" A: "Not to my knowledge."). Documents created as part of Ms. Porter's investigation can reasonably be said to have been created because of potential litigation and afforded work product protection. Whereas precautionary documents drafted by APS staff for fact-finding purposes, rather than for purposes of potential litigation, do not receive work product protection.

The Court has reviewed the documents and will analyze them in the order upon which they appear on the privilege log.

**APS00000004 - APS00000005**

This document is an email from Mark Williamson, Director of Communications, updating various APS employees on the man "impersonating a police officer." There are no attorneys included on the communication and there is no indication that the email includes advice of counsel. In fact, the communication does not contain any legal advice. Therefore, the communication lacks two essential elements—(1) legal advice, (2) from a professional legal advisor—and is, therefore, not protected under the attorney-client privilege.

Nor does the communication qualify for work product protection. There is no indication the email was created "because of" potential litigation. Instead, it appears the email's purpose was to update APS staff. The document shall be produced.

**APS00000006 - APS00000008**

This email thread appears to relate to an email from Edward Gilbert, plaintiffs' counsel, to APS Superintendent David James. Mr. James forwards Mr. Gilbert's email to Ms. Porter, stating simply "FYI." The Court acknowledges this communication represents a closer privilege determination. On the one hand, it is possible to conceive "FYI" as implicitly seeking legal advice related to Mr. Gilbert's email. On the other, "FYI" is most commonly interpreted as simply passing along information with no further response or action required. Here, Ms. Porter simply responds that she will "take care" of Mr. Gilbert's requests. She does not provide any legal advice, nor does her communication divulge attorney mental impressions, case strategy, or legal conclusions. The communications are not protected under attorney-client privilege because they do not provide, or seek, legal advice.

Further, the communication is not attorney work product. This email thread was not prepared by Ms. Porter in anticipation of litigation and it does not contain attorney mental impressions. The communication is most plainly read—and defendants fail to provide any alternative interpretation—as Mr. James delegating the handling of Mr. Gilbert's email to Ms. Porter. This interpretation is supported by Ms. Porter's response, "I will take care of this." Accordingly, the emails are not work product and shall be produced.

**APS00000009 - APS00000010**

This document appears to fall squarely within Fed. R. Civ. P. 26(b)(3), which states "a party may not discover documents … that are prepared in anticipation of litigation … by or for another party *or its representative* (including the other party's attorney, consultant, surety,

indemnitor, *insurer*, or agent)." (emphasis added). This email was prepared in anticipation of litigation for APS's representative and liability insurer, Trident Public Risk. The plaintiff does not claim to have a substantial need for the material. Indeed, the email's factual information can be obtained by other means. This document was properly withheld as work product.

### APS00000011

This is an email from an APS staff member related to scheduling meetings between law enforcement and APS staff. While APS counsel is included on the email, "[a] communication is not privileged simply because it is made by or to … an attorney." *See Zigler*, 2007 WL 1087607, at *3. Defendants claim the document "request[s] legal advice re[garding] steps to take in [APS's] investigation." (Doc. No. 66-1 (Privilege Log ["Priv. Log"]) at 457-58.) Not so. The email describes *law enforcement's* investigation, not APS's. Further, there is no request for legal advice. Merely asking "how to set this meeting up" does not require the learned advice of a legal professional. Nor is this email work product. The email was not created in anticipation of litigation but was simply intended to forward information related to law enforcement's investigation. Accordingly, there is no basis to withhold the document from the production.

### APS000000013 - APS000000025

This email thread appears to contain responses to a parent's email regarding an unrelated incident involving a teacher. Most of the emails discuss scheduling a meeting with the disgruntled parent. Such communications are not privileged. The majority of these emails do not include counsel and they do not request legal advice. The exception, however, is the last sentence of the first email on APS00000014 (sent on Wednesday, October 18, 2017 at 8:28 AM). This sentence appears to reflect legal advice that Mr. James received from Ms. Porter and should be redacted. Additionally, on page APS00000017, defendants shall redact the third sentence, beginning with "[s]he has," of the October 19, 2017 email sent at 10:42 AM. This sentence provides sensitive

information related to a teacher. Finally, to the extent these communications contain sensitive employee personal identifiable information, such as phone numbers, such information may be redacted as well.

Further, these communications are not work product. The email thread was not created in anticipation of litigation. It was created in response to a disgruntled parent's email. Communications between APS and concerned parents almost certainly "would have been prepared in substantially the same manner irrespective of the anticipated litigation." *See Roxworthy*, 457 F.3d at 593–94. The Court also notes that plaintiffs' counsel likely already possesses much of this information since he was copied on several of the communications. These documents, which are largely unrelated to the matter at issue, shall be produced with the exception of the aforementioned redactions.

**APS00002015 - APS00002017**

This series of emails was properly withheld as attorney work product. These emails appear to have been created as part of Ms. Porter's investigation into the potential claims against APS. The emails were sent in October 2017, long after it was objectively reasonable for APS to anticipate litigation.

Further, Ms. Porter's communications with Don Malarcik, Christopher Hendon's defense counsel, do not constitute waiver. While "work produce protection might be waived … when the document has been voluntarily disclosed to a third party," that is not the case here. *See Thompson v. City of Oakwood,* Ohio, No. 3:16-cv-169, 2017 WL 1196182, at *2 (S.D. Ohio Mar. 31, 2017). Porter did not disclose her work product to Mr. Malarcik. Instead, her interview with Mr. Malarcik appears to be part of her investigation and thus is, itself, work product. Disclosure of Ms. Porter's interview would reveal attorney mental impressions, possible defenses, and case strategy. This is precisely the type of legal work Fed. R. Civ. P. 26(b)(3) intends to protect. The Court would also

note that plaintiffs may attain substantially equivalent information by other means. These documents are properly withheld as attorney work product.

**APS00000712 - APS00000715**

Documents APS00000712 and APS00000713 are duplicates of APS00000004 and APS00000005, above. However, this iteration of the email attaches a file titled "FakeCop426.docx." Defendants claim that the cover email (APS00000712 and APS00000713) is protected under attorney-client privilege and the attachment (APS00000714 and APS00000715) is protected under attorney-client privilege and work product. Neither the cover email, nor the attachment is protected.

Documents APS00000712 and APS00000713 were sent by Mark Williamson, director of Communications, to various APS employees. Defendants claim the email "requests legal advice," yet no attorneys were included on the communication. The email does not seek or reflect legal advice. Instead, it appears this email was intended to update APS employees "about the man arrested for impersonating a police officer." Because document APS00000712 through APS00000713 does not seek legal advice from a professional legal advisor, it is not privileged and shall be produced.

Document APS00000714 through APS00000715 is an attached memorandum titled "Fake Police Officer Updated Story," dated April 26, 2017. Defendants claim this document is protected under attorney-client privilege and work product. The memorandum provides a factual accounting of the events at issue but does not reflect any legal advice. Further, there is no indication that counsel was consulted or had any involvement in drafting this memorandum. Indeed, the cover email states "[t]hanks to Dan Ramble and Josh Allen in his office for the work on this," indicating that the memorandum was drafted by non-attorney employees. Because the memorandum does not contain legal advice, it is not protected under the attorney-client privilege.

Whether the memorandum is protected work product is a closer call. Defendants claim "Superintendent David James directed Ms. Porter to conduct an internal investigation and prepare a legal opinion regarding Hendon's actions…." (Res. at 551.) But it is unclear whether the contents of this memorandum are a result of Ms. Porter's investigation and defendants do not make that claim. Instead, defendants claim the document is a "[d]raft memorandum reflecting legal advice…." (Priv. Log at 461.) The attachment does not contain legal advice. Instead, it simply details the factual background of the incident. In fact, the memorandum's "Concerns and Next Steps" section focuses entirely on procedures to "ensure greater safety" rather than the legal ramifications of the incident. The attachment appears to have been created for the purpose of updating APS staff regarding the incident—rather than in anticipation of litigation—and is therefore not protected work product. The documents shall be produced.[3]

**APS00002012**

This is an email from APS staff to Ms. Porter, specifically requesting legal advice. The document is properly withheld under attorney-client privilege.

**APS00002013 - APS00002014**

This is an email from APS staff related to Ms. Porter's investigation. The email appears to part of the investigation and was drafted in anticipation of litigation. The document was properly withheld as work product.

**APS00002045 - APS00002046**

This is an email from Ms. Porter to APS staff. It contains legal analysis and attorney mental impressions. The document was properly withheld under attorney-client privilege.

**APS00002047 - APS00002054**

---

[3] The Court also notes that this document was already ordered to be produced in companion case *T.V.S v. Akron Sch. Dist.* 5:18-cv-1859. (Doc. No. 74 at 653.)

This memorandum outlines the preliminary results of Ms. Porter's investigation. The document contains legal advice and attorney mental impressions. The document was properly withheld as both attorney-client privilege and work product.

**APS00010734**

While this document was included in documents for the Court's review, it is not responsive to the subject matter of the current action and does not need to be produced.

**APS00010735**

This is document is duplicative of APS00000004 - APS00000005. The document is not privileged for the same reasons as outlined above and shall be produced.

**APS00010736**

While this document was included in documents for the Court's review, it is not responsive to the subject matter of the current action and does not need to be produced.

**APS00010737**

This is an email from Mark Williamson to APS employees. The body of the email is blank and the attachment, "FakeCop426.docx," is not included. Defendants have taken the position that the email is work product "relating to the investigation into Hendon." (Priv. Log at 463.) There is no indication that this document was created because of anticipated litigation.

Defendants would have this Court believe that all emails related to the subject matter of the current action and that were created after APS reasonably anticipated potential litigation, are protected work product. This unique view improperly expands the scope of Fed. R. Civ. P. 26(b)(3). The work product doctrine "reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other

side." Fed. R. Civ. P. 26, advisory committee's note to 1970 amendments. Blank emails do not constitute the type of preparatory work that Fed. R. Civ. P. 26(b)(3) was designed to protect. This document shall be produced.

### APS00010738

This is an email from Mark Williamson to several APS employees. There are no attorneys included on the email and there is no mention of Ms. Porter's investigation. Defendants have taken the position that this email is work product because it relates to an investigation into Hendon. (Priv. Log at 463.) The Court reiterates, however, that not all discussions about the incident are protected work product. The email appears to have been drafted for the purpose of informing APS staff of Hendon's familial connections, rather than in anticipation of litigation. Therefore, the document shall be produced.

### APS00010740 - APS00010742

While this document was included in documents for the Court's review, it is not responsive to the subject matter of the current action and does not need to be produced.

### APS00010743 - APS00010744

While this document was included in documents for the Court's review, it is not responsive to the subject matter of the current action and does not need to be produced.

### APS00010751 - APS00010753

This email thread directly relates to Ms. Porter's investigation. The emails were sent several days after the incident was made public. It is reasonable to believe that these communications were created because of anticipated litigation. The documents were properly withheld as work product.

### APS00010754 - APS00010755

These emails are substantially similar to APS00010751 - APS00010753, above. These documents relate to Ms. Porter's investigation and were properly withheld as work product.

**APS00010756 - APS00010758**

These emails are substantially similar to APS00010751 - APS00010753 and APS00010754 - APS00010755, above. These documents relate to Ms. Porter's investigation and were properly withheld as work product.

### APS00010761 - APS00010763

This is an email from Ms. Porter to an APS employee directly relating to her investigation. The email was sent several days after the incident was made public. It appears this email was sent pursuant to Ms. Porter's investigation, in anticipation of litigation. This document was properly withheld as work product.

### APS00010774 - APS00010777

This email thread is substantially similar to APS00010761 - APS00010763, above. The email thread relates to Ms. Porter's investigation in anticipation of litigation and was properly withheld as work product.

### APS00010778 - APS00010780

This email thread is substantially similar to APS00010761 - APS00010763 and APS00010774 - APS00010777, above. The email thread relates to Ms. Porter's investigation in anticipation of litigation and was properly withheld as work product.

### APS00010781 – APS00010786

Defendants claim these emails are nonresponsive, were erroneously bates marked, and removed from the production. The Court agrees that the documents are not responsive to the subject matter of the current action and do not need to be produced.

### APS00010794 – APS00011075

Documents in this bates range represent a variety of documents that defendants describe as Ms. Porter's "file materials." (Priv. Log at 465-66.) A review of the 281 pages of documents indicates that certain documents, when viewed in isolation, would be discoverable. But when viewed as a compilation, the documents reflect Ms. Porter's "judgment as an attorney in identifying, examining, and selecting … those documents on which she will rely in preparing her client's defense in this case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986).

Further, the Court recognizes that "[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research." *Cason-Merenda v. VHS of Michigan, Inc.*, 118 F.Supp.3d 965, 969 (E.D. Mich. 2015) (quoting *Shelton*, 805 F.2d at 1329).

This compilation of documents is rife with Ms. Porter's, and outside counsel's, mental impressions, including thought processes, opinions, conclusions, and legal theories. This opinion work product enjoys nearly absolute immunity. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 294 ("[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.") (internal quotation marks omitted). Plaintiffs have not demonstrated a substantial need for the materials and any factual content can be readily obtained by other means. These documents contain attorney opinion work product and were properly withheld from production.

**APS00011076 – APS00011077**

These documents consist of emails between APS staff detailing an incident related to the matters at issue in this case. No attorneys are included on, or discussed in, the communications. Nor do they discuss or seek legal advice. These communications do not contain the requisite elements to qualify for attorney-client privilege.

Defendants claim these emails were sent "in furtherance of Rhonda Porter['s] investigation." (Priv. Log at 466.) However, defendants never claim that APS staff assisted Ms. Porter in her investigation. In fact, the only evidence presented to the Court related to Ms. Porter's investigation suggests that Ms. Porter conducted her investigation alone. (James Dep. at 469.) (Q: "Was … Rhonda Porter assisted in that investigation by anyone?" A: "Not to my knowledge."). The Court acknowledges that is was reasonable for Ms. Porter to conduct an investigation, in

15

anticipation of litigation, in late April 2017. However, it is also reasonable to believe that APS conducted fact-finding activities, separate and distinct from litigation preparation, during that time as well. Due to the communication's recipient, date, and content, the Court believes these emails were created as part of a fact-finding inquiry and were not created because of anticipated litigation. As such, the emails are not work product and shall be produced.

### a. Crime-Fraud Exception

Plaintiffs claim that the attorney-client privilege does not preclude disclosure of privileged documents because of the crime-fraud exception. Ohio recognizes an exception to the attorney-client privilege for communications "made in furtherance of a crime or fraud." *Sutton v. Stevens Painton Corp.*, 951 N.E.2d 91, 96 (Ohio Ct. App. 2011). The exception does not apply when a client consults an attorney about past wrongdoing; instead "the communication must be intended in some way to facilitate or to actively conceal a crime or fraud. *Id.* "A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." *State ex rel Nix v. Cleveland*, 700 N.E.2d 12, 16 (Ohio 1998). Plaintiffs have not met this burden.

Plaintiffs claim that "documents withheld by [d]efendants *could* reveal evidence that [d]efendants were attempting to actively conceal a crime." (emphasis added) (Not. at 454.) In support, plaintiffs cite communications between APS General Counsel and Hendon's criminal defense attorney. (*Id.*) The Court reviewed the documents at issue and has not identified any evidence suggesting that defendants facilitated or actively concealed a crime or fraud. Further, mere variations in deposition testimony does not constitute probably cause to believe that a crime or fraud was committed. The crime-fraud exception is inapplicable.

### b. Public Records

Plaintiffs claim that the documents at issue are subject to disclosure because they are public records. Plaintiffs cite several cases for the proposition that "internal investigatory reports are public records subject to disclosure." (Not. at 453.) None of these cases, however, stand for such a broad proposition. Instead, the Ohio Supreme Court has differentiated between investigative reports that are "specifically compiled in reasonable anticipation of … a civil or criminal action," and those that are "simply a lawful investigation of one public officer by another." *Barton v. Shupe*, 525 N.E.2d 812, 813 (Ohio 1988). Only the latter are "public record" as defined in Ohio Rev. Code § 149.43(A). *Id.* In fact, §149.43(A)(1)(g) categorically excludes "[t]rial preparation records" from the definition of public record. Trial preparation records include "any record that contains information that is specifically compiled in reasonable anticipation of … a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." Ohio Rev. Code § 149.43(A)(4). Here, it is reasonable to conclude that Superintendent James instructed Ms. Porter to investigate the Hendon incident to determine what, if any, liability APS may have. Investigative reports that were created in reasonable anticipation of litigation are not public records.

Further, § 149.43(A)(1) categorically excludes "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record." The Ohio Supreme Court has recognized that "[r]ecords of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under [Ohio Rev. Code §] 149.43(A)(1) since the release of these records is prohibited by state law—i.e., they are protected by [Ohio's] attorney-client privilege." *Leslie*, 824 N.E.2d at 995-96. Communications in which APS employees seek legal advice from Ms. Porter are not public records and do not require disclosure as such.

**III. Conclusion**

For the reasons set forth above, the documents at issue shall be produced, redacted, or withheld in accordance with this memorandum opinion and order.

**IT IS SO ORDERED**.

Dated: September 12, 2019

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**